GUSTAVUS D. DOWS, PLAINTIFF, *v.* ALMON W. GRISWOLD, DEFENDANT.

*Contract induced by fraud — obligations assumed under, cannot be disaffirmed after the fruits of the contract have been enjoyed.*

A party alleging fraud by which he has been induced to execute obligations for the payment of money, must act promptly on discovering the fraud, if he intends to rescind the contract which he was induced to enter into by it. He cannot enjoy the fruits of the transaction and then disaffirm it as to his obligations.

The rule is otherwise when the party seeking to rescind has received nothing of value from the other party.

EXCEPTIONS ordered to be heard in the first instance at General Term.

This action was upon a promissory note made by the defendant, dated March 10, 1870, payable September 15, 1870, for $2,000 in

gold, given in payment for the assignment of a patent obtained by Dows, Clark & Van Winkle, in France, on the 17th day of June, 1867, for improvements in the manufacture of iced beverages. The facts are stated in the opinion.

*Sidney S. Harris*, for the plaintiff.

*A. J. Vanderpoel*, for the defendant.

DANIELS, J.:

This action was brought to recover the amount due upon a promissory note, made by the defendant on the 10th day of March, 1870, payable to the order of William H. Dickinson, for the sum of $2,000 in gold, on the fifteenth day of the following September, and indorsed to the plaintiff. A verdict was directed for the amount unpaid, to which direction the defendant excepted, and the exception was ordered to be first heard at the General Term, and judgment in the mean time was suspended. The consideration of the note was the sale of an interest in a French patent for the manufacture of iced beverages; and it was previously owned by the firm of Dows, Clark & Van Winkle, of which the plaintiff was a member. The laws of France provided that the transfer, in whole or in part, of a patent, could only be effected by a notarial deed, after payment of the tax imposed; and that no transfer should be valid as regards a third party, before it had been registered at the secretary's office of the prefecture of the department in which the deed had been executed. The tax imposed upon a patent was 100 francs for each year of its continuance, for a period not exceeding fifteen years, and the patent in question was issued for that entire period. The law regulating the mode of transferring patents, required the payment of what was termed the whole tax, to render the transfer effectual; and it is contended on the defendant's behalf, that as the whole of the tax for the period over which the patent could be extended by its payment, was not paid, the transfer was void, and the note given by him was without consideration. No authority was referred to by which it was held that the entire tax for the whole period over which the patent could be extended, was what was meant by the whole tax required

to be paid as a pre-requisite to the validity of a transfer; and in view of the language used in the law, such a construction would not be well warranted by its terms. It is true that the transfer could only be made after the payment of the whole tax prescribed by the article referred to. But the payment required by that article was simply yearly installments of 100 francs each year; and the patent was forfeited only by allowing one year to elapse without such payment. It was, substantially, a tax each year for the continued or yearly use and enjoyment of the patent; and it could not have been designed to require prepayment for every year through which the patent would be extended, as a condition to the legal validity of an assignment. The provision applied, in terms, to partial as well as entire transfer; to one for a year as well as to one for fifteen years; and the supposition would be unreasonable in the extreme, that the law designed that neither transfer could be made without the prepayment of the whole tax, payable during the entire life of the patent. It would impose an unjust restraint upon the privilege secured by another section of the law, declaring that every patentee may transfer the whole, or part of the proprietorship of his patent; and also be inconsistent with the provision requiring payment of the tax only in yearly installments of 100 francs. What the act declared should be done in this respect to render the transfer effectual, was payment of the whole tax as it was prescribed by article 4; and that was a gross tax on a patent for fifteen years, of 1,500 francs, payable in sums of 100 francs each year. It was a compliance with this article which was rendered necessary; and that could be done by making payments of the yearly installments as they matured. Payment in that manner appeared, from the evidence, to have been made by the attorney of Dows, Clark & Van Winkle before 1870, and for that year by themselves. This was shown by Mr. Bliss, the defendant's partner. He stated that he learned in the presence of Van Winkle that the lawyer had paid the annual tax of 100 francs up to that time; that Dows, Clark & Van Winkle continued to pay it while the witness was in Paris, and he understood that they paid it for the year 1870. This he stated was the information secured by him in an investigation made to ascertain whether the taxes had been paid, which were necessary, prior to the transfer of the patent, and

no question was made but that it was entirely reliable and truthful. There was no foundation whatever, therefore, for the support of the objection that a compliance with this provision of the French law had not been shown in the case. The first transfer was made of the entire patent to the defendant, and William R. Bliss and William F. Fowle. It was executed by each member of the firm of Dows, Clark & Van Winkle, the patentees, and afterward properly attested before notaries; and it seemed to conform in all respects to what was required to render it complete by the terms of the French law. For that, and certain apparatus and fixtures required for the manufacture and sale of the patented article, which had been previously transferred by the patentee to William F. Fowle, the defendant made, and Fowle & Co. indorsed, his notes for the the sum of 75,000 francs, and delivered them to Dows, Clark & Van Winkle. The apparatus and fixtures were then transferred by Fowle to the firm of Fowle & Co., which consisted of the defendant, Bliss and Fowle, and business was commenced by that firm in Paris. After it had continued for a short time, it turned out that Fowle was insolvent, and his interest in the property was seized for the payment of his debts. For that reason, an assignment of his interest in the patent was taken by his copartners, and they surrendered the instrument, transferring the patent back to the patentees, and took from them another, by which a transfer of three undivided fourths was intended to be made, with an agreement for the transfer of the other one-fourth when they should be repaid the moneys they agreed to advance to redeem the property of the firm from its seizure for the debts of Fowle. The instrument by which the transfer was designed to be made, was executed by Clark and Van Winkle, and properly attested as to them before a notary. They, also, as the attorneys in fact of Dows, each subscribed his name to it. But as they were not empowered to do that by any written authority, the notarial attestation of his execution of it could not be made. In order to provide for supplying this defect, an agreement was entered into by his copartners in their own names, and in his name by them as his attorneys, that he should ratify, by his own signature and seal, the acts of his partners in making both the agreement and the transfer. These instruments were dated on the 6th of April, 1869, and for the transfer designed

to be made, the defendant and Bliss were to pay 10,000 francs less than the price previously agreed upon for the patent, and they were to have the remaining fourth by reimbursing the amount required to be advanced to release the apparatus and fixtures, in paying the debts owing by Fowle, for which they had been seized. The agreement contained a further stipulation that the patentees should, within thirty days, satisfy and remove any attachment, judgment or lien upon the interest of the plaintiff in the patent. But as it appeared to be affected by nothing of that nature, it will be unnecessary to consider this clause in the disposition which should be made of the case.

In the new arrangement made with the defendant and Bliss, it was apparently understood that the old notes made by the defendant, and indorsed by Fowle & Co., in part payment of the price of the patent, as it was at first transferred, should, so far as they were outstanding, with the exception of two of them, be retired and surrendered, and new notes taken for the balance, payable to the patentees. One of the old notes was divided and afterward paid, and the other was also paid. After the two notes were given for the divided note, and about the 2d of March, 1870, the plaintiff applied to the defendant for the new notes. But he declined to give them until the plaintiff executed the assignment which his partners had made for the three-fourth interests in the patent. That, he affirmed, he had already done; and, in reliance on the truth of that statement, the defendant gave the note in suit, and three more for similar amounts, and another for over $15,000. This statement afterward turned out to be untrue, and for that reason the defendant objects that he should not be held liable for the payment of the note on which the verdict was directed. Why the plaintiff should have falsely made this statement does not appear. By the new arrangement which was consummated in consequence of it, he gained nothing. For he surrendered to the defendant the old notes which the new ones were made to replace, and deducted 10,000 francs from the amount of the preceding indebtedness; and his firm undertook to advance the amount necessary to relieve the apparatus and fixtures from the custody of the law, and surrender the other fourth of the patent when that should be repaid. While the statement was a fraudulent one, no substantial advantage was

derived from it by either the plaintiff or his firm. The assignment of three-fourths was not operative as an actual transfer, without the execution of it by the plaintiff. But notwithstanding that, the defendant and Bliss transacted and carried on business under it, and do not seem to have been deprived of any advantage which the completion of the instrument would have secured for them. It is true they could not sell rights under the patent with only this defective transfer. But it is equally so, that no instance was mentioned in which a sale could have been made, if the instrument had been completed by the formal execution of it by the plaintiff.

The first objection urged against the recovery on the failure of the plaintiff to properly execute the transfer, is, that the right to the purchase-price was conditional on its performance. But the agreement which was made was not in that form. It contained a guarantee that the plaintiff should ratify both the assignment and the agreement by his own signature and seal, and he had no lawful right to the notes which were given until that had been done. But he did obtain them, and carried out the residue of the understanding, and the defendant and Bliss afterward continued their business under the patent. The notes imposed upon the defendant, by their form, an unconditional obligation to pay. The defendant could undoubtedly have returned what he had received, and annulled the transaction, on account of the plaintiff's failure to execute the transfer, as soon as he discovered that to be the fact. But he did not do that; on the contrary, he availed himself of the advantages designed to be provided for his firm by the assignment, in the same manner as though its execution had been unexceptionably complete. After doing that, he could not consistently resist payment of his notes by reason of the plaintiff's non-performance.

The second objection urged in behalf of the defendant on this part of the case is, that his obligation was fraudulently procured, and for that reason cannot be enforced by legal proceedings. But the same difficulty stands in the way of the success of this objection, which disabled him from rescinding because of the plaintiff's failure to perform the agreement. He has voluntarily retained and enjoyed the benefits designed to be secured by means of the transaction. The consideration of the notes was the purchase-price of the interest expected to be acquired in the patent — not simply the

execution of the assignment and agreement by the plaintiff— and that, the defendant and his partner enjoyed until they discontinued their business and Mr. Bliss left Paris. That was done not because the plaintiff failed to execute the instrument, but substantially because the business proved unprofitable, and appeared unpromising. His partners had offered to have the plaintiff execute the assignment upon its being sent by Mr. Bliss to London for that purpose. He not only failed to send it, but omitted to produce it for execution when he had it in his possession, in London, where that could have been, and probably would have been, done at once, if it had been requested. Instead of endeavoring to have the execution completed, the instrument was retained, and all the business which could be done, was performed under the patent it was designed to transfer. After that, the right to rescind and resist payment of the note on account of the fraud, was extinguished. The defendant's partner, Bliss, at all times knew of the incomplete nature of the assignment, and his conduct in the business was binding upon the defendant. The rule is well settled, which requires the innocent party to act promptly on the discovery of the fraud, where he intends to rescind, and in that way discharge himself from the obligation he may have been deceived in creating. He cannot affirm the transaction by enjoying its fruits, and disaffirm it by annulling his obligation. The law requires him to do one or the other; he cannot do both. (*Cobb* v. *Hatfield*, 46 N. Y., 533.) A different rule prevails where the party endeavoring to rescind has received nothing of value from the other party. (*Nichols* v. *Michael*, 23 N. Y., 264.) There it is sufficient to surrender any worthless instrument which may have been received from the party guilty of the fraud, at the trial. But this is not a case of that description, for the defendant and his partner not only had the use of the patent in their business, and to that extent extinguished its existence, but in addition to that he sold an eighth interest in it to General Smalley. These were things he did not and could not surrender, when, for the first time, he offered to return the interest proposed to be assigned, after the present action was commenced. It is claimed, in behalf of the defendant, that all he or his partner had received, was an instrument without the least effect upon the patent, and for that

reason the offer to return it after the action was commenced, was sufficient. This position depends upon the law of France, already referred to, requiring the transfer to be by a notarial deed; and if the defendant is entirely right in taking it, then the entire interest first assigned to himself, Bliss and Fowle, still remained the property of the firm constituted by himself and Bliss. That was transferred by a notarial deed, and no reason appears for questioning its validity. Fowle transferred his interest under it to the defendant and Bliss. But all they did to divest themselves of it was to return the assignment to the plaintiff and his partners, which was not a transfer of the patent as the law of France required it should be made. To comply with what that prescribed, a notarial deed from the defendant and Bliss was necessary; and that was never made or executed. If the second instrument was invalid for want of the plaintiff's signature, the first surely remained in force; and that was sufficient to support the defendant's obligation to pay the purchase-price. Even if a complete rescission of the second transaction could have been accomplished, the defendant's condition would have been wholly unimproved; for that would have required a return of the old notes, on which a more extended liability existed against him. Evidence was given tending to show that he was induced to enter into that by means of fraudulent representations made by Fowle, and assented to and confirmed by the plaintiff. But even if that fact was proven, he had gone too far, after its discovery, to rescind it for that reason. He stated to the plaintiff that he wanted to throw up the whole thing, that he had been swindled in the matter from the very beginning, and thought him privy to Fowle's misrepresentations, as there were many points he must certainly have known. But instead of doing it, or endeavoring to do it, he continued to hold the assignment and the patent, and carry on the business protected by it. He had his election, if he had been deceived by fraudulent representations, to surrender and return what was received through the transaction produced by it, and repudiate his obligations given upon the faith of their truth, or retain what had been delivered, and thereby affirm what had been done. He chose the latter alternative and pursued it until it was too late for him to recede; the consequence of which was that he rendered himself liable for the payment of his notes. The law

did not impose that burden upon him; he assumed it by his own act; and no authority exists under which he can be relieved from its effect. The motion for a new trial should be denied, and judgment ordered on the verdict in favor of the plaintiff.

DAVIS, P. J., and BRADY, J., concurred.

Ordered accordingly.